Good morning, Your Honors. My name is Carol Farr. I represent Kathy Costanich, foster mother, former president of the Foster Parents Association of Washington State. I would like to reserve three minutes for rebuttal. Is your clock working? It does. It says 1445. Kathy Costanich appeals the District Court's grant of summary judgment to all defendant social workers primarily on the grounds of qualified immunity. She asks you to reverse the summary judgment in its entirety, to reverse the grant of qualified immunity, to reverse the grant of absolute immunity to three of them, to reverse the District Court's finding that the social workers acted merely carelessly and negligently, and to reverse the District Court's failure process violation, and the District Court's denial of, the District Court denied giving collateral assessment to Washington State Court findings on the underlying issues. Let me ask you a question. It's my understanding then you're not appealing the dismissal of DSHS? I didn't appeal that in my brief, Your Honor. Okay, so we're only looking at the individual? The individual social workers. Thank you for clarifying that. So this case stems, I'm sure you've all read it, but it stems from a Washington State Department of Social and Health Services finding. The investigator made a finding of child abuse that Kathy Costanich had abused the children in her home. Mental abuse? Yes, emotional abuse. Emotional abuse. Through primarily language. Yes. And she claimed that she had all these witnesses who had told her this, and that led to the revocation of Costanich's foster care license. It also resulted in the motion in, I don't know if it was in the dependency court or whatever, to modify or to cancel her guardian. Yes, that's one of Kathy's, Mrs. Costanich's claims. Before they even made the finding, two of the social workers met with Costanich and told her they would let her keep her little girls who were in guardianship. They would let her keep her little girls, but only if she gave up her right to an administrative hearing. And when Mrs. Costanich asked for an administrative hearing, they went directly to juvenile court with a false declaration from the investigator saying Costanich had, you know, sworn at these girls and done abusive, really language things to them. That was a motion to terminate? That was a motion to terminate with a false declaration, but it did lead to the, she lost her daughters for a while. Well, as I understand it, this particular situation was such that, and you can correct me if I'm wrong, that the daughters were subject to another system, and the Native American system took then that under advisement and then gave it back to her without problem. Isn't that true? It is correct, Your Honor. They are Native American children. The department provided those same false statements to the tribal court who stepped in, and they did take out Costanich's children temporarily. Let me ask you the big question that I have. It seems to me that one must find a violation of rights here, and I guess I'm trying to figure out what case I rely upon to suggest that there is a right that, well, I can find some cases that there's a right to be free from a criminal charge that's based on fabrication. I don't see this to be a criminal charge, and I'm trying to find the case that says there's a right that one could have that same violation based on a social worker's liability in a civil proceeding. Well, Your Honor, there is a camera, the municipal court camera, I cited it in my supplemental. It says, Fourth Amendment guarantees of due process protection of the individual against arbitrary action of government extends beyond criminal cases. Well, I understand. However, it seems to me that if I'm going to find this deliberate fabrication, and I'm going to find that there's such a case that I run straight into the Ninth Circuit case of Gosvik v. Perez, which doesn't say that just because there was a falsification there's a problem. It says after having known that you falsified and then you proceed, there's a problem. But in this particular instance, the evidence is that this lady, Doron, whatever her name is, didn't have any knowledge about that. She was pursuing what she thought were the facts. And I guess applying Gosvik v. Perez, I'm having a tough time finding the violation. Your Honor, that's actually a little misunderstanding of the Gosvik cases. Gosvik, Perez, and Cunningham were all the Wenatchee cases. In those cases, the plaintiff's claim was that those officers had coerced false statements from witnesses. Isn't that what you're suggesting here, too? No. Mrs. Kosinich is not making any claim about any witness coercion. She's making no claim about any witness coercion. She isn't saying the way she interviewed the people coerced bad stuff? All she's saying is that she put, rather than 18 people, she put 34 people, and she said interviewed rather than just talked to? Is that all she's alleging? No. Mrs. Kosinich alleged that Sandra Doron's statements, where she quoted witnesses, that those were false. No witness, every one of those witnesses testified in the administrative hearings. Every witness who supposedly had made faulty statements about Kosinich's behavior, every witness disputed what Doron said. There was no evidence. There were no witnesses who Doron admitted in the hearings, for instance, that her report of witnesses who said that Kosinich made racial remarks, that that was false. There were no witnesses who did that. There is no evidence, in fact, that Kosinich ever interviewed any child, and the adults that she interviewed all came forward to testify Doron's statements were false. Moreover, so the claim, Your Honor, is not that she coerced false statements, but that no one knows what those people said to her, but that she made false statements. Now, well, my worry is that I can't find the applicable case right on point about a social worker. I mean, you're trying to analogize, if I understand it, that the police and those who are involved in criminal charges based on fabrication are not entitled to immunity. Well, I'm trying to figure out the same case with a social worker. We're talking about it as civil proceeding, and I couldn't find the case. And then when I found the Gosevich case, it doesn't just talk about giving the false statements. It says, after having done this, now full well knowing how bad you are and what you're doing in those particular situations, you continue nonetheless. It's almost a malice standard. And so my worry is that if I look at Gosevich and I compare it to this situation, I don't know whether there's a constitutional right violated here. I could explain that, Your Honor. And first of all, there is no case exactly on point. That's why we're in the Ninth Circuit. Social workers have this ability, this power to say anyone, well, parents, foster parents, are basically guilty of child abuse. They don't have to make criminal findings. But these findings of child abuse and the replication of a foster care license is essentially a quasi-criminal finding that entitles a foster parent to due process. That is the Ongam case and the Nguyen case. Well, but you don't have to have a criminal case to have due process. It's false statements that take a person's profession, that put a stigma on the person, that put her on the list so CPS, she could never have another employment because of background checks. It is the false statements which entitled, it is the revocation and the stigma attached to the finding and the revocation that entitles her to due process. As for the knowing, I want to go back to the Gosevich cases. The reason those officers were immune from lawsuit was because they didn't know. They had a certain kind of questioning techniques. They didn't know that the statements they got from witnesses were false. In this case, there were no false statements from witnesses. The witnesses in Mrs. Kosinich's life, the witnesses who came forward, did not make any false statements. They all testified that Mrs. Kosinich did not do those alleged acts. Those who had been interviewed testified that the investigator had misquoted them. The investigator herself admitted she had misquoted some of them and there was no evidence. So the investigator, Duran, surely knew that her statements were false because she admitted that they were false. Why doesn't the Beltran, our en banc opinion in Beltran, help you answer Jitina's questions? I'm just so nervous. The Beltran says that, yes, investigated... That's the exact situation. It's a civil action and the social worker fabricated evidence. Isn't that almost on point? It is exactly on point. The social workers in Beltran fabricated evidence of child abuse and they are not entitled to immunity. The only social workers who would have been entitled to immunity would be if they made a prosecutorial decision. None of these social workers did. This is exactly like Beltran. It is a straight claim of false statements. I think you have to distinguish among the people that you suit because Duran fabricated evidence. That's what Beltran goes to. The others may or may not have known. That's exactly correct, Your Honor. Clearly the case is very strong against the investigator. Because I only had 50 pages and I only had 15 minutes and because I named six defendants, I did put in my brief how each of these defendants violated Mrs. Kosinich's civil rights. For those who fabricated DSHS records, Mr. Bilzomi testified in the hearing that he and Mr. Stutz had indeed tried to trade Mrs. Kosinich, her daughters, for her rights to have a hearing. Payne and Stutz were supervisors. They both admitted. They read letters coming in from doctors, social workers, from aides who were in the home that disputed Duran's allegations and they took no steps. There is the case in Beck, the Beck case, which says supervisors who know or should have known that evidence is false are supposed to take some steps to do that. Ms. Schmidt made another false referral against Mrs. Kosinich during the proceedings and lied under oath during the proceedings. I cited all of that evidence. I had so much evidence I couldn't put it all in. Well, we can look at the record and make sure about that because I don't want to interrupt your time anymore by going to the specific points, but I looked at each one of these evidences to try to make sure. Thank you. So I have one and a half minutes for rebuttal only. Thank you. Good morning, your honors. Almost, still morning. I'm Pam Anderson. I'm an assistant attorney general and I represent the state of Washington and the individually named defendants in this matter. What's important to recognize in this case is that Ms. Duran commenced this investigation only after receiving a referral claiming that Kosinich had choked a child, had called that child a bastard, had told another child to get his black ass in and clean up the room, and had called an eight-year-old girl a cunt and grabbed her by the hair. Based on that referral, Duran had no choice but to go out and do an investigation. And when she did that investigation, the child that had made that allegation to his therapist confirmed that what he had told the therapist was true. At that point, it's clear that Duran simply didn't meet the standard for deliberate fabrication. She could not have known and should not have known that Kosinich was innocent of the allegation of child abuse. She went forward and investigated the allegations, both the allegations of physical abuse and the allegations of emotional abuse. And as she did that, what came to light was a remarkable consistency among the children. And despite the allegations in the appellant's brief, she did investigate and she did interview each of the children. And the circumstances of that are well set out in the record. I can refer the court to the sites, which are basically put together in the state's supplemental excerpts of the records at about pages 92 through 100 that lays out the details of those interviews. And she found that another child had had urine-soaked sheets put in his face, that there was very pervasive use of the most repugnant profanity around the house. Kosinich herself admitted her use of profanity. And that at least one other child, the mother said the same thing about the remark being made to the eight-year-old girl. Neither the referring child nor the other child who was interviewed never recanted that testimony, not through the hearing, not through the investigation process. So under the standard that this court set forth in Gosvick and Cunningham and Devereaux, there's just simply no way that an investigator in the position that Duran was in, in this case, knew of the innocence of the subject of the investigation or should have known. To say that would basically require her to discount everything that the children say in an investigation. And the children are the vulnerable people in the investigation, and she needs to be drawing inferences in basically requiring her to discount everything the children said and instead listen to the things that the subject of the investigation said, the friends of the investigator, and other adults who actually weren't on the scene during the time that the allegations referred to. But there's no question the report is not exactly what she did. That she has, I mean you can say as to certain ones of these particular individuals, but as to the whole report, said that she interviewed 34 people and she later admitted she'd only briefly contacted 18. And then they say that what she put in the report wasn't what they told her. Isn't that true? Your Honor, that's not exactly true. But aren't we supposed to take the evidence as alleged by the plaintiff in this instance if we're going to give her qualified immunity? Well, Your Honor, first of all, there are some findings in this case that Duran, that Kostinich is bound by. Those are the findings of the administrative law judge. Why? Did the district court expressly reject that argument? I'm sorry? Did the district court expressly reject that argument? And the district court erred in rejecting that argument. Because under Washington law, which this court must... But she found that they weren't addressing the same issues. So collateral estoppel or restitute clause didn't apply and I happen to agree with her. Collateral estoppel doesn't bind the state because the standard of proof changed and the issues were not the same. But collateral estoppel did apply to bind Kostinich as with respect to those specific allegations. Well, the issues were really quite different, weren't they? Well, they were different, Your Honor. So let's move on to the other part of the question, which is that actually the adult witnesses did not contradict the essential parts of Duran's report. And furthermore, even if there had been some discrepancies and some instances of carelessness in the report or the way the report was made, under GOSVIC it's really clear that the standard is not whether the investigation was negligent or even whether there were errors. Look at the facts in GOSVIC. The detective there actually stated that eight children confirmed the allegations when only two children had done so. And he stated that the children tested positive for sex abuse when, in fact, the true finding was that they were consistent with sex abuse. Those were really grave discrepancies. But nevertheless, for a constitutional violation to occur, this Court found that you must have more than that. You have to have a lot more than that. You have to have the investigator knowing or should know that the allegations made in the case were false. But here we're supposed to be giving all of the inferences to the plaintiff, aren't we? And therefore, giving all the instances to the plaintiff, it seems to me that one could come to the same state that we find in those other cases. It's not necessarily a time for summary judgment. That's the question. Well, Your Honor, this uncontroverted fact, and this, you don't have to give any inferences to the plaintiff or to the defendant to look at the referral and what the referral said and the fact that Kay, when Duron talked to him or interviewed him or contacted him, whichever preposition and verb you want to use, that he confirmed that the allegations in that referral were correct. And he did that, again, in a declaration at the hearing. So if you just don't take anything else but Kay's statement, I think you can't, a reasonable person could not infer, even drawing all of the inferences and... Kay's statement alone wasn't sufficient to take Ms. Kostinich's children away, was it? Well, Your Honor, as a matter of fact, Ms. Kostinich does not have a liberty interest or a property interest in her children. You didn't write that down, did you? Your Honor, yes, it was mentioned in the state's Supreme Court. I didn't see it in the decision, but you did not argue it for the district court, at least the district court judge says you didn't argue that. The district court believes that we didn't, Your Honor, and that's true in her decision, but if you look at the state's summary judgment papers, you will see that the state disputes whether Kostinich had a liberty or property interest in either the care or the license for the foster children. Let me ask you this, do you think the case of Beltran suggests that there is a violation of a constitutional interest that for which one could not find a violation on the first prong of a 1983 case? I'm not sure I understand your question, Your Honor. Well, we're talking about the violation of a constitutional right, and Beltran says that workers do not have absolute immunity for fabricating evidence during a preliminary investigation, making false claims in an affidavit, or for their investigatory work. Does that suggest that there is a violation of a constitutional right as to qualified immunity? No, Your Honor, I don't think it does. Why? Well, first of all, Beltran was decided well after this investigation, so it clearly wasn't established law at the time of this investigation, that's number one. Second of all, Beltran didn't involve a case where a foster parent's children were being removed or a foster parent's license was being revoked. It involved a case where biological parents' children were being removed by the state. There's a fundamental interest that every court recognizes for the rights that biological parents or adoptive parents have in their children. That's simply not the case with foster parents, and there are good reasons for that. Because investigators doing foster care cases have to already consider the rights of the children and the liberty, interest, and rights of the parents. Those are two competing considerations they have to consider when you're looking at a biological relationship, and that might tip the balance of their investigation. There's no such interest, and no court, including the U.S. Supreme Court, and this circuit, and all of the other circuits, no court has recognized that kind of liberty interest or property interest in a foster parent's care of children or in a foster care license. So that's a very important distinction between the Beltran case. And Beltran really didn't do any... The state just doesn't summarily revoke the license, does it? The state doesn't summarily... Without any process, does it? The state does not, in fact, and there's procedural due process. She has some interest. Well, to have procedural due process protection, you have to have some interest. Well, she might have an interest. In the license. Well, under Washington law, the state has held that there's not a property interest in a foster care license sufficient to invoke even procedural due process. But remember, here we're talking about substantive due process, and a much more fundamental right or liberty interest or property interest is required in order to implicate substantive due process. Perhaps... So the state here wasn't required to go through all the ALJ, the first hearing, the second hearing, the appeals? The state wasn't required to do that? Your Honor, the state was required to do that as a matter of state law and state statute. That's different from saying that there is a constitutional interest that implicates substantive due process. It's even possible, although certainly the state does not believe this to be the law, that there would be a property interest sufficient to implicate procedural due process. And I don't think there's a serious... It seems a little strange that they would take that position, but yet provide such procedural rights before they can effectively terminate the license. But state procedural rights don't rise to the level of a constitutional right under the federal constitution, and certainly not to the level of substantive due process. But in any event, they couldn't terminate her foster license without proceeding through these statutory procedures. Isn't that correct? That is true under Washington statutes, and they did give her ample due process. I think the authenticity of the process that she received was demonstrated by the fact that she did prevail in the end. Could you explain one thing to me about the guardianship of the two children? Is that through the juvenile court or through the dependency court? Your Honor, it is... What was the status of that? Your Honor, it is through the juvenile court. And there's a statute that provides for a guardianship dependency. That should be distinguished from a guardianship in a non-dependency case, which is a more permanent status that someone acquires. The statute... And to what extent does her status as a foster licensee play into that assignment or designation as a guardian? Your Honor, Ms. Kostinich was a foster parent as well as a dependency guardian. And it doesn't... It entitles her to more procedural due process before her rights as a guardian are terminated. They can be terminated, though, for any substantial change of circumstance and if it's in the best interest of the child. They can't be terminated without some process attached to that. But it doesn't rise to the level, by any means, of a biological parent's rights. Certainly you can't terminate a biological parent's rights. And the basis for terminating the guardianship was what? The basis for terminating the guardianship was that because of a number of observed licensing violations, as well as the founded allegation of child abuse, that it was believed by the department that placement in that home was no longer in the best interest of V and E. The founded allegation of child abuse, was that Duran's finding? Yes, it was. It was. Although there, the record shows... She submitted a declaration to the guardianship court, is that correct? She did, Your Honor. And that's an important point, because I think submitting that declaration as evidence in a different proceeding brings her more under the Byrne standard in this court, which would give her absolute immunity from that act, than under the qualified immunity standard in Veltran. There would be no basis for the state's attempt to terminate her guardianship without that declaration. Is that correct? No, that's not true, Your Honor. As a matter of fact, there were other licensing, and if you look at the declaration of Ms. Tewumpta Wilson, which is in the supplemental excerpts of records, she lays out the reason she had for believing that it was in the best interest of V and E for their guardianship to be terminated. The guardianship, was that the document that was filed in the, I guess it would be the Washington Juvenile Superior Court? Yes, Your Honor. Is that included in the excerpts of records? Yes, it is, Your Honor. Oh, the motion itself? The motion. The motion. I don't think so, Your Honor. I think what's in there is Ms. Wilson's description of the reasons she decided to terminate it, and of course, Ms. Duran's declaration is included in that. Yeah. All right. Thank you, counsel. Thank you, Your Honors. I just must say, I appreciate that this Court isn't giving collateral estoppel. Defendants just made the same exact claims, that Duran had this evidence, Duran had this evidence, that children said this. Those claims, she brought those to the ALJ, six months of hearings, 49 witnesses, none of those were true. No child, no adult confirmed what Duran said. The ALJ found that those were false. The defendants had another year, they brought the same claims. Duran found all this evidence. They brought those to the Superior Court. That was another year, three hearings. The Superior Court said, no, there is no evidence. Their revocation is arbitrary and capricious. They brought the same claims again to the Court of Appeals, and I'm sure you've read the Court of Appeals ruling. They said, Duran's not credible. She made false statements under oath. She fabricated witness statements. Okay, so, all right, let's assume that's all true. What case do you have? What case do you have that there's a clearly established right, a due process right, or property or liberty interest in being licensed as a foster home care and or a dependency guardianship? Okay, I don't know about the right to be licensed, but it's clear in state law, in the Ongom and Nguyen decisions, and in many, many federal decisions, that once the state issues a license, that the revocation of that license requires due process protection, because that license... You're saying that's a federal constitutional property right. Yes, it is, and I think I cited Addington v. Texas. The Ongom court, I cited another case, but it's right in my brief. The Supreme Court says that it has nothing to do with federal constitutional... There is no federal constitutional law in this question, and we have to look to the state to determine whether there is such a due process. And, I mean, if we get there, if they really raised it, and the state law is pretty straight, there is no property right. Your statute suggests there's no property right. In the recent Ongom decision, our Supreme Court was crystal clear. It is the revocation through disciplinary proceedings that makes it a constitutional right, because, and this court just made a ruling in the Humphreys case, because when they revoke these licenses, your name, you're put on the state registry for child abuse and as a revocation, and it destroys your ability to practice your profession. You can't be a daycare operator. You can't even adopt your own grandchildren. It is the revocation, which is the quasi-criminal finding, which I can just, I can't remember the case. I know he cited Addington v. Texas and someone else, but the Ongom case, the woman had simply a registration with the state. It wasn't even had any requirements. It was protected. Are there cases that are cited in your brief? They are cited in my brief. Ongom and Newen, and I think they cited Addington v. Texas. Thank you. Your time's up, and we will submit this case. I don't have even one more second? Well, what are you going to do? I have 136 on this. Is that wrong? You're over. You're over. That's over. The red says you're in the deficit. Could I say one more sentence? Okay. Thank you. I just want to say, please, please let this go to the trial, because all foster parents are really at the mercy of sometimes malicious, false, grossly reckless findings, and they ruin people's lives, and they ruin their families. Thank you. Okay. Kostinich v. D.S.H.S. is submitted, and this session of this court is finished for today. All right. This court's recessions stand adjourned.
judges: Wardlaw, Paez, Smith N. R.